AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
9/23/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DTA  DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
9/23/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: JD  DEPUTY

United States of America

v.

FRANK WILLIAM EVANS,

Defendant.

Case No. 8:21-mj-00637-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 2, 2021, in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi) | Possession with Intent to Distribute Fentanyl |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

Farshid Hashempour
*Complainant's signature*

Farshid Hashempour, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: September 23, 2021

*Karen E. Scott*
*Judge's signature*

City and state: Santa Ana, California

Honorable Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA: Faraz Mohammadi (714-338-3599)

**A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

**INTRODUCTION**

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI"). As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately twenty years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including

narcotics trafficking and violent offenses committed by street gangs.

## PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against and arrest warrant for FRANK WILLIAM EVANS ("EVANS") for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Possession with Intent to Distribute Methamphetamine, and 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi): Possession with Intent to Distribute Fentanyl.

5. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## SUMMARY OF PROBABLE CAUSE

6. On or about August 2, 2021, SAPD Officer I. Buan, while working with a Probation Enforcement detail, conducted a probation compliance check at 908 North Louise Street, in the city of Santa Ana, California. This location was the address of record for EVANS, who is on active probation with search and seizure terms.

7. Officer Buan and members of the Orange County Probation Department knocked on the door to the residence, but

did not get a response. EVANS was then observed exiting the side yard with a gray plastic tube in his hand. The tube, which was melted at each end, appeared to have dark residue inside of it. Officer Buan recognized this tube as a device commonly used to ingest narcotics. EVANS was handcuffed and detained in the yard.

8. After EVANS was detained, Officer Buan advised EVANS of his Miranda rights. EVANS understood his rights and agreed to speak to Officer Buan. EVANS then admitted that he used the tube to smoke methamphetamine. During the interview, Officer Buan was contacted by Probation Officers who advised him that they had found additional evidence in the garage. Inside the garage was a red and black tool bag that contained approximately 276 grams of a white crystalline substance believed to be methamphetamine, and approximately 279 grams an off-white substance believed to be fentanyl. The Officers also found a digital scale, four cell phones and packaging material consistent with narcotic distribution and sales.

9. Officer Buan showed EVANS the white crystalline substance, which he identified as "speed," a common street term used for methamphetamine. EVANS also identified the off-white powdery substance as fentanyl. EVANS said he paid $100 for the methamphetamine and was given the fentanyl with the promise that he would pay for it at a later date. EVANS denied being involved in the sales of narcotics.

## STATEMENT OF PROBABLE CAUSE

7.  I have reviewed the police report prepared by SAPD Officer Buan covering the arrest of EVANS on August 2, 2021. Based on my review of the reports and my conversation with Officer Buan, I have learned the following facts:

  a.  On August 2, 2021, at about 8:38 a.m., Officer Buan assisted Deputy Probation Officer (DPO) N. Carmona and other Orange County Probation Officers with a probation compliance check at 908 North Louise Street, Santa Ana, California.  This location is the address of record for one of DPO Carmona's probationers, identified as EVANS.  Prior to the compliance check, Officer Buan and his partner, Officer N. Cavendish, conducted a records check on EVANS, which confirmed his active probation status.

  b.  Upon their arrival at EVANS' residence, Officer Buan and DPO Carmona knocked on the door, but there was no response at the door.  Officer Cavendish, DPO J. Andrew and DPO E. Guzman were positioned to watch the side yard while Officer Buan and DPO Carmona knocked on the door.  After the knock at the door, Officer Cavendish, DPO Andrew and DPO Guzman observed EVANS walking out towards the side gate.  Officer Cavendish and the Probation Officers opened the gate and contacted EVANS in the side yard.

  c.  EVANS was observed holding a plastic gray tube in his hand, which contained dark residue inside of it.  Officer Buan noticed that the ends of the tube appeared to have melted, possibly from exposure to a flame or heating implement.  Based

4

on his training and experience, Officer Buan has known narcotic users to place controlled substances on foil, which they then heat from underneath. The heat causes the substance on the foil to heat up and vaporize into a smoke, which is then typically inhaled by means of a straw or tube similar to the one EVANS was observed holding. Officer Buan concluded that EVANS was in possession of narcotic paraphernalia, in violation of the California Health and Safety (HS) Code H&S 11364(a).

        d.   EVANS was handcuffed and escorted to the backyard patio, where he was seated in a chair while the Officers completed the probation check. Using his SAPD issued Officer's Index, Officer Buan read EVANS his Miranda rights. EVANS acknowledged his rights and told Officer Buan that he used the plastic tube found in his hand to smoke approximately 0.5 grams of methamphetamine per day. EVANS stated that he used the plastic tube to smoke methamphetamine that morning. While Officer Buan was speaking to EVANS, DPO Carmona and Officer Cavendish advised Officer Buan that they had found something in EVANS' garage. Officer Buan concluded the interview and accompanied DPO Carmona to the garage.

        e.   In the garage, DPO Carmona showed Officer Buan a red and black tool bag that she found on the floor in front of a dark couch. The tool bag had two substances inside of it. One of the substances was wrapped in a thick piece of plastic, and described as a white crystalline substance resembling methamphetamine. The other substance was an off-white powdery substance that was found in a thin plastic bag. The appearance

of the off-white powdery substance was consistent with fentanyl.

   f. On the couch, DPO Carmona also found a black digital scale with white residue on it as well as EVANS' cell phone.  Officer Cavendish also located three cell phones on a bookshelf next to the couch, but only one of the cell phones was functional.  Officer Cavendish located a brown box with several small paper envelopes.  The packaging was located on the same bookshelf where the phones were located.  Officer Cavendish found a small red, white and blue colored cylindrical container, which contained an off-white powdery substance consistent with fentanyl.

   g. Officer Buan then went back to EVANS and asked him about the items found in the garage.  Officer Buan removed the white crystalline substance wrapped in thick plastic from the tool bag and showed it to EVANS.  Evans initially said that he did not know what the substance was before finally admitting that it was "speed."  It should be noted that the term "speed" is a common street term for methamphetamine.  Officer Buan also showed EVANS the off-white powdery substance, which EVANS identified as fentanyl.  EVANS admitted to mixing the methamphetamine and fentanyl together, which he referred to as a "speedball."  A "speedball" is term given when a stimulant such as methamphetamine is mixed with a depressant or opioid like fentanyl to produce an intense euphoria while minimizing the negative effects of either substance when taken by itself.  EVANS said he paid $100 for the half pound of methamphetamine.

6

   h. While speaking with EVANS, Officer Cavendish handed Officer Buan a Ziploc bag containing an off-white powdery substance, which EVANS also identified as fentanyl mixed with dirt. EVANS said he has not paid for the fentanyl, but was supplied with the narcotic on the promise to pay for it at a later date. EVANS denied being involved in the sales of methamphetamine or fentanyl.

   i. At the Santa Ana jail, Officer Buan weighed the narcotics and found that the substance believed to be methamphetamine weighed approximately 276 grams. The packages of the off-white powdery substance believed to be fentanyl were found to weigh approximately 279 grams. The narcotics taken from the search of EVANS' residence were later obtained from the SAPD and sent to the DEA Southwest Lab for quantitative and qualitative testing. Based on my training and experience, which includes observing fentanyl and methamphetamine, I submit that there is probable cause to believe that the narcotics taken during the search of EVANS' garage are in fact fentanyl and methamphetamine. Additionally, based on my training and experience, 276 grams of methamphetamine and 279 grams of fentanyl are distribution amounts of the narcotics.

//
//
//

## **CONCLUSION**

7. For all the reasons described above, there is probable cause to believe that EVANS has committed violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Possession with Intent to Distribute Methamphetamine, and 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi): Possession with Intent to Distribute Fentanyl.

/s/
FARSHID HASHEMPOUR
Task Force Officer, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  23  day of September 2021.

*Karen E. Scott*

HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE